When you are ready. May it please the court, before I begin I would like to say as an old mountain North Carolina lawyer it's nice to see so many Tar Heels in the room today. Be careful of your use of the word Tar Heel. Sounds very appropriate to me. Of course I'm referring to the state motto, the Tar Heel State. Of course. As a Wake Forest graduate. May it please the court, Mr. Flores in this case is entitled to a new trial. Because the trial court denied his motion for a new trial based upon the failure of the government to disclose their star witness' mental health records. Brady and his progeny certainly required the disclosure of the mental health records that were not disclosed in this case. For a variety of reasons. Certainly this is impeachment evidence that could have been used and should have been used to impeach Mr. Kennedy at trial. The government in its brief argues a couple things about what, makes two points essentially as to why these materials shouldn't have been disclosed. They contest the disclosure part of it first of all. The first argument the government makes is that these records were available from other sources. My response to that is I think sometimes folks who work in the government forget how easy it is for them to get records and how difficult it can be for private folks to get records. But that wasn't the case here. I mean you had subpoenaed the records. They were in fact made available. It was a screw up here. Certainly. And I would just point out that the defense counsel at trial went through the hip of steps and issued a subpoena, asked for a court order and did the things. There was no other way to get these records other than what she actually did. But did not follow up before and simply just say, well, I issued a subpoena. Did you ever send them? Which would have yielded the answer, yes, we sent them. Well, my response to that is that the government in their brief says, well, you know, the defendant didn't show up to calendar call and defense counsel didn't do these things. Of course, the government is not in a terribly good position to claim negligence when they didn't simply open an envelope in their own case. So would they? But we don't parse. I mean it's not very helpful to parse blame. One of the issues for Brady purposes was the evidence admissible from another source. Certainly. And it appears here that the information was made available in response to the subpoena and just. Well, it just wasn't delivered to the defendant or the court actually. I think my recollection is the court order required a disclosure to the trial court. So, again, I would say that under HIPAA, that procedure was what's required under the regulations and that it goes to the court and then the court has to determine whether it gets disclosed to the defendant. The defendant is not in a position to just get disclosure without some action by the court. That's not the way that HIPAA works. They can issue a subpoena for it, but the provider is actually prohibited from disclosing that information without a court order. So it really wasn't available from the actual provider without some kind of court action. Well, the interesting thing about this is that I think that Flores filed an ex parte motion to subpoena records from the treatment center, which the court granted. That's what I understand. So the government wouldn't even have known initially that information was forthcoming, whereas Flores' counsel would have. I'm not sure that I understand. I'm completely clear about that because – Well, Flores sought a subpoena. Yes, ma'am. An ex parte. The subpoena was granted. The order specified that the records were to be brought to the court. And this took place, as best I can tell, without the government's knowledge. It was an ex parte motion. But I can't – it's not clear from the record to me whether it was an ex parte order. In other words, the motion may have been ex parte, but the order may have actually been in the record. So I can't really answer the court's question. Okay. But at least counsel was aware that the records would be coming to the court and could have also asked the court without excusing government screw-up. Well, I suppose that that's true. There is some – my recollection, and this is a bit fuzzy, but in the transcript, there is some discussion on the first day of trial about the records, although they had – what makes that confusing is that Mr. Kennedy's counsel had actually given some of the records, apparently, to the parties, too. So, I mean, on behalf of the defendant, I think we can all – my position certainly would be that, yes, there was negligence here, and there's nothing in the record that supports that there was anything intentional. I mean, I certainly wouldn't be arguing that. On anybody, yeah. Right. And, you know, I think the court's characterization that this is just a place where several people dropped the ball, perhaps. But at the end of the day, it's Mr. Flores who goes on trial without the availability of these records. And at the end of the trial, when we find out that these records were out there, then we get, in a sense, a chance to remedy this problem, and this is the issue, I think, that's before the court. Did the trial court abuse its discretion in denying the motion for retrial? And essentially, my understanding of the court's order is that it didn't really – Was it a motion and a retrial? Well, there was a series of motions. I think that the record reflects that the defendant filed a motion to dismiss, and then, with prejudice, I think when the defense counsel initially believed or thought that this was intentional, when the government responded that it wasn't intentional and then asked for – the government actually filed a motion to dismiss without prejudice, then the defendant objected to that motion, and then they filed a motion for new trial. So it's a complicated, sort of tortured history about the procedural fallout, if you will, after the trial's over. My primary argument, though, is that the failure to disclose here was prejudicial to the defendant, regardless of where the fault lies. And Kyles v. Whitley talks about, in circumstances where information's not disclosed, the standard being the reasonable probability that it would have affected the outcome of the trial. Didn't Kennedy testify on direct that he had a serious long-term cocaine addiction, that it affected his memory, that he was receiving treatment, including medication, that he was testifying because he'd been caught and didn't want to go to jail for a long time? All those things are exactly true. And so what would you – what would the medical records have added in your view? Two things. The first thing is that when Mr. Kennedy testified about those things, he portrayed his treatment as being what I've characterized in the brief as sort of run-of-the-mill substance abuse, anxiety, and depression. What the treatment records show is that he actually had a much more serious mental health issue, in fact, at one point in time claiming to suffer from auditory hallucinations. That's a far different matter, I would submit to the court, than simply saying I was receiving mental health treatment and taking medication. That's the difference between somebody who certainly may have some mental health issues as opposed to somebody who is admittedly, at least at some point, not in touch with reality or at least having a difficult time perceiving reality. And really when we talk about the credibility of a witness at trial, there's two components to that. The first component is their ability to sort of understand and take in the information that they've witnessed. And then the second part is their testimony at trial, their ability to recall that at trial, or their motivation to recall it at trial. Really, and again, I think it was a good job of impeaching the witness by the defense counsel with what she had. She did a good job of talking about getting him to admit things that went to his credibility and his recall at trial. This is an issue that really goes to his ability to perceive those facts and his reliability as a witness. So the fact that he had suffered from hallucinations is a much bigger deal, in my mind, as opposed to somebody who had just been receiving mental health treatment or was a cocaine addict, for example. The second part of that, the second point I would make is, and this is at least if not more important than the first point, is he lied about it. He lied about his mental health treatment. He was directly asked a question by the U.S. attorney and said, well, you didn't have any hallucinations or anything like that. And he says, no, no, no, nothing like that. Well, if the defense counsel had been able to have the records in her possession at the time that he asked that question, that's the difference between having a witness on the stand who may have some credibility problems and a witness that actually sat there and lied to a jury panel in the courtroom. Mr. Spence, you mentioned this issue of the additional information about hallucinations. It was a rather, as I recall, rather curt, short statement in the records mentioning some indication of auditory hallucinations. And that's the only thing that I recall in these records. Why isn't the equally plausible explanation is that the witness simply forgot? And if there really isn't anything more about that particular symptom, how does that change the calculus here? Well, I would submit, Your Honor, that it's more than just the isolated sort of auditory hallucination. He also has this episode where he describes himself as having a nervous breakdown where he's found naked in the front yard. He certainly omitted that. He wasn't asked about it. Well, he was asked about a sort of general question by the prosecutor. Well, he's not a medical. I mean, he's not a doctor. But I think the court can look very clearly at the sort of sequence of questions. The questions by the prosecutor are asking him, you know, well, this is basically, this is just, you got some mental health treatment, but the severity of it is really the focus of it. You didn't have hallucinations. It wasn't more serious than that. And actually, the records demonstrate that perhaps it was more serious than that, and he omits that. I understand the court's question about, well, he could have just forgot about the hallucinations. I would submit it would be very difficult for him to have forgotten about this episode where he was found naked in his front yard. Well, maybe so, but describing it in medical terms and attempting to pin a diagnosis on it from a layman's perspective might not be plausible. Well, and that may well be true, but what's the defendant's remedy is that he's in a jury trial and he has a defense lawyer that can follow up and ask questions about that. But the defense lawyer can't do that if the defense lawyer doesn't have the information that should have been disclosed to counsel in order to do that. I've run past my time here, I think. Perhaps I haven't. Thank you. I apologize. And I think to follow up on those two points, too, the reason why the trial court's order we would contend is an abuse of discretion is because it doesn't actually address these particular issues at all. It sort of talks about, well, this is cumulative. It's more impeachment. This is much more significant impeachment evidence than the impeachment that was done at trial. It really does go to the witness's not only ability to perceive facts, and I've cited the cases from around the country which talk about the difference between somebody who can perceive facts correctly and not perceive facts correctly. And then what I would continue to characterize as being at least a statement of omission, if not a statement of actual falsity, about what the scope of his mental health condition was and treatment was. So the trial court really doesn't analyze that. No one really argues it the way I think that the defendant should have been argued, but that is just an issue that doesn't get addressed. Counsel received the New Beginnings material the morning of trial? Which counsel? The full... Are you talking about the government counsel? No. Flores' counsel. Am I not remembering that correctly? She received... The defendant actually, the defendant's counsel actually received the full records once the jury was out. They come back on, I think it's a Thursday morning after the jury has been instructed. But I thought that she had received, that the counsel had received some New Beginnings materials at the beginning of trial. Actually, my recollection is that at some point prior to trial, Mr. Kennedy's attorney, in response to the Rule 11 information, had disclosed both to the government and the defendant a portion of the records. And made information available to the government, which the government... Correct. ...shared with the defendant. Right. Apparently that was the information that came from Kennedy's counsel was given to everybody, is my understanding. However, it didn't include some of what I would consider to be the more serious issues that are related in the actual matter. The auditory hallucination involved music playing, I believe. That's what I... When he was trying to sleep, he would recall, he would hear music playing. That sounds similar to what my recollection is. Thank you. Thank you. The last issue, the second issue, of course, in our brief, is simply an objection to the violation of the defendant's Sixth Amendment rights to have the jury actually find the drug quantity, which I would submit to the court is the trend that we seem to see from the United States Supreme Court. I understand there's no cases that certainly would be against the case law in this circuit at this point. But you have preserved the error. Yes, ma'am. Thank you. Thank you very much. And you have some time on rebuttal. Ms. Christine? May it please the court, April Christine, on behalf of the United States. And yes, Your Honor. In this case, the district court correctly denied defendant's motions for mistrial and new trial because there was no Brady violation in this case. The defendant failed to show that the government suppressed the evidence. And as this court has previously held, information that is available to the defendant does not constitute a Brady violation. The Supreme Court made clear that the Brady doctrine applies to information that is known to the prosecution but unknown to the defense. And that is not this case. In this case, the defendant had the information readily available to him from an independent source. The record shows that the defendant learned about the mental health records at least two weeks before trial. The defendant served a subpoena on new beginnings a week before trial. Defendant did not follow up on his subpoena to make sure that new beginnings complied with the court's order. But even with that, the court ruled that defendant was entitled to those records the day of trial, before trial began. A reasonably diligent defendant would have checked with new beginnings once he had that order in hand and checked to make sure that he had all of the records. So in this case, defendant could have discovered the missing information before trial and certainly before Kennedy testified. So she was not entitled to rely on the representation that she had received, the records? No, Your Honor, and any reliance would not have been reasonable because in this case the prosecutor made clear, when the prosecutor raised the issue with the court, the prosecutor explained that he had obtained records from Kennedy's attorney. From Kennedy's, right. From Kennedy's attorney, yes, Judge Duncan. And he explained that he was producing what he had. He explained that those records came from Kennedy's attorney's records. Now certainly in this case, and as the court can see from the record, at 661 and 663, new beginnings' internal emails show that even though Kennedy's attorney was authorized to receive any and all information about his mental health records, it was new beginnings that gave him a subset of the file. Well, we know that now, but the parties didn't know that then. And that's exactly right. But again, back to Your Honor's question, the prosecutor made clear that he was producing what he had. He did not represent that he had gotten those records from new beginnings, and he did not represent that it was a complete file. He did explain to the court that a package had been delivered to an assistant U.S. attorney. He also explained to the court that he did not yet have that package, but he had obtained what he thought was a duplicate set from Kennedy's attorney. But he did make clear that that was not coming directly from new beginnings. There was no indication in the record that the government had a subpoena or that the government was planning on getting those records, and so there's no reasonable reliance here on what the prosecutor said. But again, even if the prosecutor thought that he had a duplicate set, a reasonably diligent defendant armed with a subpoena, armed with the court's order that he was entitled to those records before trial began, would have checked to make sure that what he had was a complete file. Well, you know, when you think about what the prosecutor did here, and it doesn't appear to be any fault on the part of the prosecutor here. It was quite reasonable what he was assuming. I think the record shows he thought he had them, thought he had given them everything, and then he went back and he saw this big package. He looked and he saw that it was much thicker than what he had given. At that point he realized he hadn't given all of the records. That wasn't all of the records. But even given all this here, it seems like the remedy is pretty simple. The government was asking, was acquiescing, I think, in saying a new trial without prejudice. The defendant seemed to want to do it with prejudice, but as I understand it, it changed their minds and says, okay, we'll just have a new trial. But the judge wouldn't do it. If I may respectfully disagree, Your Honor, the record shows that the government did in fact make an oral motion for mistrial without prejudice, but the record also shows that that motion was made in response to the defendant's argument of bad faith on the part of the government. The defendant raised the issue of mistrial first, and the defendant claimed that mistrial was warranted because of the government's bad faith, which would have precluded the government from being able to retry the case under double jeopardy. The government, in response to that, indicated that if the court was inclined to consider a mistrial, that it be without prejudice because the government argued that there was no bad faith on the government's part in this case. That seems pretty evident. There's no bad faith. That seems evident from the record, and maybe even the defendant had come around to that in terms of trying to prove that. So then that just left everybody asking for a mistrial and then without prejudice. But the trial court wouldn't do it. Even the government felt mistrial would be at least an appropriate remedy or one they could live with. You could just try the case again. You've got everybody there. Well, Your Honor, the government only suggested that remedy if the court was inclined to grant a mistrial. The government consistently argued that there was no Brady violation, consistently argued that. You suggested it, and as you say, inclined to grant a mistrial, you suggested it because you thought that the court could find bad faith, but the type of mistrial you were asking would be not based on bad faith. And, Judge, when that again went to the issue of whether there was double jeopardy, that claim, that issue was not before this court. Although the defendant argued it in the district court, he abandoned that claim on appeal. So we are left with whether or not the court was correct in concluding that there was no Brady. It doesn't mean that the court was not correct in what it ultimately did, but it's just odd that when you have both parties saying, okay, have a mistrial and the only thing is whether it's with prejudice, and then it seems like the defendant comes around and says it's without prejudice too, at that point, at the end of the day, you say, okay, we won't have this go up to the full circuit. Save those judges some time on this. We'll go ahead and try this again. You won't have that issue. But he chose to go forward on it. That's my point. Did the defendant ever say agree to it without prejudice? No, the defendant never agreed to it without prejudice, and that was the issue. But now make sure I understood what the defendant's counsel just represented on that. I thought that he said there was a motion to dismiss with prejudice, and then after they determined what the circumstances were, they then decided to go with the motion for a new trial. That was when I asked about the retrial, because he said retrial. That is not my recollection of the record, Your Honor. My recollection of the record is that the defense immediately argued bad faith on the part of the government. It was clear from the record that there just wasn't enough information as to what happened at that moment in time. I don't think there were holes in the thing. You can go ahead with that. I just was curious in terms of both sides being there. It seems like you're in agreement. The judge just wouldn't do it. And I wouldn't know. The defendant is not appealing that ruling. The defendant is appealing the motions that were post-trial. Ms. Christine, back to your earlier point about the lack of a Brady violation, so I understand the government's position. Your position is not that the government didn't have these full records in its possession, because you obviously did. Another prosecutor had the records. They just didn't know that they had been subpoenaed in response to a defense request, but that the defense had equal access to these records, and therefore that's why there's no Brady violation. Is that fair? Certainly that's the first part of the government's argument. Yes, Your Honor. In this case, at some point the records did come into the government's possession, and that was the day before trial. But even after the records came into the government's possession, the defendant continued to have access to those records, because new beginnings continue to be the source of the information. And so even though the government did at some point get possession of the entire file, the defendant continued to have ready access to those records, knew about the records, and certainly could have, as the government stated in its brief, could have checked with new beginnings to ensure that he had the entire file. The second part of the government's argument is that even without the suppression element, the defendant here failed to show that the information was material. First, the defendant failed to show that the information was not cumulative. And as was discussed earlier, certainly in this case, the defendant was able to attack Kennedy's perception, ability to perceive events, and Kennedy's motive to lie. First, in attacking his ability to perceive events, there was other evidence of mental health issues, and he did use that evidence of mental health issues to attack Kennedy's ability to perceive events. He used the fact that he had severe cocaine addiction, that he had memory problems for a long period of time, and that he was being treated for anxiety and depression. His ability to attack his motive to lie, he had ample other evidence. He had his cooperation with the government. He had his plea agreement with the government. He had his prior drug dealings. He had the fact that Kennedy was caught with 2 kilograms of cocaine. He had the fact that Kennedy was facing a 10-year mandatory sentence. What about the fact that he was, at least according to the defense view of things, was caught in a lie in the very court proceedings in which he was testifying? That's pretty compelling, powerful evidence, which I don't think can be properly characterized as cumulative. And, no, Your Honor, Judge Diaz, when you asked the earlier question as to how many questions were asked about this, you're right. There was one question, and that question was couched in a number of symptoms. So there was symptom A, B, C, hallucination, and D. The record doesn't indicate whether or not he understood. He answered no to all of them. And perhaps the question was not phrased very well, but he answered no to all of them. Well, I thought he was asked separately about hallucinations. And, again, he may have a different view of what, he may not have understood what the prosecutor meant by that, but it's clear that the defense would have had the opportunity to indicate, well, you said this, but here are these records that suggest otherwise. And my understanding is that it was one question, and the question was couched. It wasn't simply did you experience hallucinations. It was did you experience this symptom, this symptom, hallucinations, and that symptom. And he answered no, simply no. And, certainly, that answer was not accurate as to hallucinations. But even if that missing information, even if that piece of it further tainted his credibility, there was overwhelming evidence of defendant's guilt in this case. And, certainly, in this case, the jury had Poulin's description of the entire drug deals and how they worked. The jury had phone records that traced that last drug deal from beginning to end, including multiple phone calls between defendant and Kennedy. The jury had photographs of the seized cocaine. The jury had Agent Cohen's testimony instructing Kennedy to call his supplier to come and pick up the drug money. The jury had defendant's own statements during that last phone call, arranging to pick up the money in the same place, in one hour, in the truck, in the toolbox, indicating frequent transactions of that type. The jury had defendant's actions in arriving at Kennedy's residence, in driving around the back of the residence, in parking behind the truck where the money was supposed to be, and in walking towards the truck at the time that he was arrested. The jury had photographs of defendant at Kennedy's residence. The jury had Agent Cohen's testimony about verifying through the cell phone that that defendant was the supplier that Kennedy called in that last phone call. The jury had Kennedy's positive ID of defendant's photograph as his supplier during a show-up at the time that defendant was arrested. So there was overwhelming evidence here of defendant's guilt. And as far as the sentencing is concerned, defendant knowingly and voluntarily waived the claim that he now makes on appeal. And certainly in this case, defendant objected to any drug quantities being submitted to the jury at trial, even after the court explained that the law required that at least threshold quantities be submitted to the jury. Defendant emphatically stated that he wanted no quantities to the jury. So defendant has waived his claim. And if there are no further questions, then the government asks that the court affirm the sentence and conviction in this case and thanks the court. Thank you. May I please the court? I'll be brief and just clarify a couple of points. One is the questions that Judge Wynn asked about the sort of sequence of who made what motion and what order. It's correct to say that there was an oral motion for mistrial with prejudice that was made by the defendant. The government then made an oral motion for mistrial without prejudice. The government then filed a written motion asking for, to deny, well, it was a written motion in opposition to the defendant's oral motion for mistrial. And then the defendant on page 817 filed a reply to the government's motion in which on page 820 the defendant argued that essentially that the government misstated the rule, the standard under Rule 33 for a new trial. Although it takes some parsing to get there, there is certainly a suggestion in that reply that a new trial would be an appropriate remedy. I would note, though, that it's in Section D that the defendant also says, oh, and by the way, Judge, you can also just dismiss it with prejudice. But I think if you read the totality of that motion and reply again, it certainly suggests that a new trial without prejudice is one of the remedies that the defendant would fall back on. Something real quick for me, and that is the defendant made an ex parte motion or at least action before the court to subpoena these records. That's my understanding. And the court granted that. That's my understanding. And at that point, what is the responsibility of the defendant? I mean, and the records ought to be delivered to the court, and the defendant makes the inquiry the records have not been delivered to the court. So at that point, is there not some remedy that the defendant would possess because he got the subpoena, subpoena went to New Beginnings, and there's some indication they've not complied. So are you powerless then to just say, well, they didn't pay our subpoena or the court order any attention, so we're just going to go to trial? Well, certainly the defendant could go back to the court and say, you know, they didn't. Why wouldn't you? You went to trial without them. You knew they were there, and you knew they had these records, and you're about to go to trial, and you know you've got this court order telling them to give you these records, but it appears as though they haven't. Well, I think my read of what happened here is that the defense counsel didn't do that because of the fact when she shows up the first day for trial, you know, there's this discussion about, well, you have all the records that were given. No, you've got the records that the counsel had. Correct. If you're going to accept that, then that's not New Beginnings. I mean, you've got to, you know, what you're entitled to get is the records from New Beginnings, and what you chose to accept were these records that had been supplied to the prosecutor who then gave them to you. You didn't use what was available and say, no, Your Honor, we want the records from New Beginnings. Because it could have been changed, anything could have happened to them. You want to have the records. But why didn't you do it? I mean, it just seems logical. I mean, we actually had a case sort of similar to this in which the whole question was, does the hospital have to turn over these records, and how do you do it? It was a different context, of course. But that subpoena is pretty powerful stuff. A court order to a facility means turn over the records. And to fail you to do so, the remedy can be pretty quick. Well, and I don't have a good answer for the court about why defense counsel didn't follow up and do more to ensure that. That creates the problem on the alternate source that Judge Duncan alluded to earlier and the court seemed to have some initial concern about. How do you get over that? I mean, how do we come in and say there's a Brady violation when all you had to do was just you've already started the process. You didn't go up in an open court and say give it to them, and everybody knows about it and the prosecutor will get them. You went in ex parte and got it. Then you want to blame the government when it comes to them in an envelope. I assume it doesn't say on that envelope these are his medical records, mental health records. That doesn't say that probably for obvious reasons. So I don't know what it is. And they're not expecting anything for it. But you complain you didn't get it all, and yet you could have gotten it all. I see I'm out of time if I may have a chance to respond. The problem with that is that they were supposed to go to the court. So to some extent the defendant can only know if that hasn't been complied with if they are advised by the court that the defendant can ask. No, they can ask. Certainly. I mean, I understand the defense counsel could have come in and said, did the court get all these records? I think that got lost in the wash of we discussed when they walked in and started talking about these are the mental health records. And certainly the ball got dropped here on a number of occasions. But I don't think that that necessarily or I'm sure that it doesn't mean, though, that this somehow is an alternative source. It was all going to come through the same conduit. The question of who dropped the ball at what point in time still resulted in a negligent failure to disclose. There was no other thing the defendant could have done than do what they did other than show up at trial and say. Or a negligent failure to ask. Well, and perhaps that's true, but the fact is the government did get the records and didn't disclose them. They didn't even know they were coming. Well, I'm not sure that they didn't know they were coming. That's not clear from the order. Can I ask one more question? Yes. The question to the witness with respect to hallucinations. My recollection is that that question was asked in isolation. He was specifically asked about hallucinations separately. Is that your recollection? Actually, I found it in the record, and it was a bit of a compound. My recollection is it's a series of questions that are asked in a rather sort of compound way. I would agree with Ms. Christine. It wasn't a very well-articulated series of questions. It included bipolar and... That's correct. Part of the point is if you had the records, you would have dived into that aspect of it and said, now, did you just tell us it was a hallucination? I mean, that's part of it. I think it seems a greater problem you guys as well. Initially, I was that alternate source. I'm just not feeling that right now. Maybe I will, but we'll see. Thank you, Your Honor. Thank you, counsel.
judges: Allyson K. Duncan, James A. Wynn, Jr., Albert Diaz